UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Andrew Balk et al.,

      Plaintiff,

      **Hon. Hugh B. Scott**

      09CV249A

    v.

      **Report
&
Recommendation**

Fererstein & Smith, LLP,

      Defendants.

Before the court is the defendants' motion for summary judgment (Docket No. 34).

**Background**

The plaintiffs, Andrew Balk and Lisa Balk ("the Balks"), commenced this action under the Fair Debt Practices Act (15 U.S.C. §1692 et seq.)("FDCPA") alleging that defendant, Feuerstein & Smith, LLP, failed to discontinue a foreclosure action pursuant to a mechanics lien notwithstanding being advised by plaintiff that the lien was invalid. The plaintiff claims that the defendant's conduct violates the F.D.C.P.A. §§1692d, 1692e, 1692e(4), 1692e(5), 1692e(10), 1692f and 1692f(6). (Docket No. 1 at ¶ 37).

It appears that in September of 2006, the plaintiffs entered into a contract with Charter Oak Contracting, Inc. ("Oak") to perform certain improvements and repairs to the Balk's home.

1

Oak allegedly subcontracted a portion of the work to RGGT, LLC ("RGGT"). The plaintiffs did not enter into any contract with RGGT. (Docket No. 1 at ¶ 15-16). The plaintiffs contend that Oak performed a substantial amount of the work pursuant to the contract but not to the full satisfaction of the Balks. (Docket No. 1 at ¶ 12). The plaintiffs allege that they paid Oak a substantial portion of the contract price, but considered any shortfall to be "waived" by Oak due to their "shoddy and unprofessional work." (Docket No. 1 at ¶ 13).[1] It appears that Oak did not make any payment to RGGT pursuant to the subcontract. (Docket No. 1 at ¶ 17). RGGT demanded payment directly from the plaintiffs, however, the plaintiffs refused to pay believing that they had discharged their obligation by making payment to Oak. (Docket No. 1 at ¶ 19).

On March 19, 2007, RGGT filed a Notice of Mechanics Lien ("Lien") against the plaintiffs' home in the Erie County Clerk's Office. The plaintiffs contend that the Notice of Lien did not comply with New York Lien Law in many respects. (Docket No. 1 at ¶ 21-25). RGGT engaged the defendant, Feuerstein & Smith, LLP ("Feuerstein") to attempt to collect the money they believed the Balk's owed to RGGT. (Docket No. 1 at ¶ 26). Feuerstein commenced a civil action on March 18, 2008 against the plaintiffs in the New York State County Court. The Balks engaged counsel, Kenneth Hiller, Esq., who mailed an answer to the civil action to Feuerstein on April 3, 2008. In a cover letter with the answer, Hiller advised Feuerstein of the defects in the Notice of Lien and the failure of RGGT to file an affidavit of service relating to the lien with the Erie County Clerk's Office.[2] In the letter, plaintiffs' counsel demanded that Feurerstein amend

---

[1] The plaintiffs assert that they paid Oak $10,000 of the $11,000 contract price, but did not pay the additional $1000 because they were not satisfied with the work. (Docket No. 21-2).

[2] Among other things, the April 3, 2008 letter notes that the lien was not filed against Lisa Balk (a co-owner of the property); that the lien was not served on the contractor with whom

2

the complaint in the civil action or remove the foreclosure action against the plaintiffs' home. Feurerstein refused to amend the complaint, and instead, continued to prosecute the foreclosure action. In February of 2009, the plaintiffs filed a motion to dismiss the foreclosure action. In response, Feuerstein agreed to discontinue the entire civil action. (Docket No. 1 at ¶ 31).[3] The plaintiffs assert that by reason of the foregoing, they became indebted to their attorney and that the pendency of the foreclosure action prevented them from selling or refinancing their home for almost a year. (Docket No. 1 at ¶ 33). Thus, the plaintiffs contend that Feuerstein intentionally and maliciously commenced the foreclosure action, and continued the foreclosure action, to instill fear in the plaintiffs that they would lose their home if the did not pay the alleged liability to RGGT. (Docket No. 1 at ¶ 34). The instant action under the F.D.C.P.A. ensued.

The defendants now move for summary judgment alleging that the plaintiffs are collaterally estopped from bringing the F.D.C.P.A. claims and that the plaintiffs waived any such claims by executing a release in the underlying state court action. (Docket No. 34 at page 3).

---

the Balks had a direct relationship (Oak); and that the Balks paid Oak $10,000 for the work that was done and that RGGT should look to the Oak for the money they were seeking. (Docket No. 22-6).

[3] In a subsequent email, Feuerstein asserts that they instituted the underlying foreclosure action at the behest of RGGT, and that Feuerstein was not aware that another contractor (Oak) was involved. Feuerstein claims that the action was voluntarily discontinued "shortly thereafter." (Docket No. 21-8). Notwithstanding the April 3, 2008 letter to defendants' counsel, Feuerstein asserts that the first "confirmation" of another contractor was not received until the plaintiffs' filed a motion to dismiss in February 2009. (Docket No. 21-8). The record in this case also includes the Balks' May 6, 2008 response to RGGT's demand for statements in the state court proceedings which provided Feuerstein with further detail regarding the role of Oak. (Docket No. 24-7).

## Discussion

**Standard of Review**

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. See Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F. 2d 186, 188 (2nd Cir. 1992) citing Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The court must draw all reasonable inferences in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party. See Taggart v. Time Inc., 924 F.2d 43, 46 (2d Cir.1991); Howley v. Town of Stratford, 217 F.3d 141 (2nd Cir. 2000). However, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit Information, Co., 970 F.2d 1110, 1112 (2nd Cir. 1992), citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2nd Cir. 1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The non-moving party must come forward with enough evidence to support a jury verdict ... and the ... motion will not be defeated merely ... on the basis of conjecture or surmise." Trans Sport, supra, 964 F.2d at 188, quoting Bryant v. Maffucci, supra. If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are

4

properly controverted by the nonmoving party." Glazer v. Formica Corp., 964 F.2d 149, 154 (2nd Cir. 1992), citing Dusanenko v. Maloney, 726 F.2d 82 (2nd Cir. 1984). The Court's responsibility in addressing a summary judgment motion is identifying factual issues, not resolving them. See Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2nd Cir. 1990). However, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2nd Cir. 2000) quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Motion for Summary Judgment**

Collateral Estoppel

Feuerstein asserts that the plaintiffs are precluded from maintaining the instant F.D.C.P.A. claims based upon the doctrine of collateral estoppel. In this regard, the defendant asserts that by instituting the instant F.D.C.P.A. claims, the plaintiffs are re-litigating the issue of the validity of the mechanics' lien filed by Feuerstein on behalf of RGGT in the prior state court proceedings. (Docket No. 34 at page 4).

Collateral estoppel bars a party from relitigating an issue that has already been fully and fairly litigated in a prior proceeding. Purdy v. Zeldes, 337 F.3d 253, 258 (2d Cir.2003). Issue preclusion apples when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a

valid and final judgment on the merits." Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir.2006) (internal quotation marks omitted). See also Bank of New York v. First Millennium, Inc. 607 F.3d 905 (2d. Cir. 2010)(same).

The issue of whether the defendant violated the plaintiffs' rights under the F.D.C.P.A. was not raised or litigated in the state court proceedings. The issue in the instant action is whether Feuerstein intentionally and maliciously commenced the foreclosure action, and continued the foreclosure action, to instill fear in the plaintiffs that they would lose their home if the did not pay the alleged liability to RGGT. Although the plaintiffs challenged the validity of the mechanics lien in the underlying state court action, that issue is not identical to the F.D.C.P.A. claims raised in the instant matter. See Schuh v. Druckman & Sinel, L.L.P., 602 F.Supp.2d 454 (S.D.N.Y. 2009)(The FDCPA claim against the Druckman firm is independent from the transaction that was adjudicated in the state court-that is, the foreclosure on the mortgage and the amounts due under the Schuhs' loan.). Indeed, creditors are generally precluded from asserting the merits of the underlying debt as counterclaims in a F.D.C.P.A. case. Stover v. Northland Group, Inc., 2007 WL 1969724 (W.D.N.Y.2007); McCartney v. First City Bank, 970 F.2d 45 (5th Cir.1992); Fentner v. Tempest Recovery Services, Inc., 2008 WL 4147346 (W.D.N.Y. 2008)(Arcara, J.). Moreover, although RGGT's claims were discontinued by stipulation, no factual determination as to the validity of the mechanics lien was made in the underlying state court proceedings. Finally, it is contrary to the remedial purposes of the F.D.C.P.A. to construe the discontinuance of the creditor's claim against the debtor as also absolving the debt collector from responsibility for alleged abuses under the F.D.C.P.A. Villari v. Performance Capital Management, Inc., 1998 WL 414932 (S.D.N.Y.,1998)(The FDCPA is

designed to eliminate abusive debt collection practices, to insure that debt collectors who refrain from using abusive collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses.); Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir.1989)(The FDCPA is remedial in nature and should be liberally construed.).

To the extent the defendants seek summary judgment based upon collateral estoppel, the motion should be denied.

### Waiver by Release

The defendant also contends that the plaintiffs waived any claims raised in this action because they executed a general release resolving the state court action. (Docket No. 34 at page 11). This claim also lacks merit. The general release executed by the Balks releases RGGT from any claims which the Balks may have had against RGGT. (Docket No. 34, Exhibit 7). The release does *not* refer to claims the Balks may have under the F.D.C.P.A. against Fuerestein. Fuerestein asserts that the law firm is "in privity" with RGGT and therefore, they are entitled to the benefit of the release executed by RGGT. (Docket No. 41 at page 6). The defendant presents no authority in support of their conclusion that they are in privity with RGGT. The cases cited by Fuerestein in support of this contention deal generally with estoppel or are otherwise inapposite. For example, Fuerestein cites to Cobb v. Pozzi, 363 F.3d 89 (2d. Cir. 2004), a case in which corrections officers brought action pursuant to § 1983 alleging that the defendants disciplined them in retaliation for their association with a union. The parties had proceeded through arbitration prior to the federal court litigation. During the trial in Cobb, the plaintiff requested

that certain findings made by the arbitrator be deemed binding as a matter of law. Cobb, 363 F.3d. at 112. The Second Circuit held that the District Court erred in instructing a jury that the arbitrator's findings are binding because the standards of proof during the arbitration proceeding were different than those required in the federal court litigation. Cobb, 363 F.3d. at 115. Cobb does not support Fuerestein's assertion that they were in privity with RGGT. The same is true for the other cases cited by defendants. In Sandler v. Simones, 609 F.Supp.2d 293 (E.D.N.Y. 2009), the court held that under New York law, a provider of products for the blind and visually impaired was collaterally estopped from asserting libel claims in federal court against an advocacy group, and one of the plaintiff's competitors. That purported action was based on the competitor's republication of an article authored by the advocacy group. The Court applied collateral estoppel in that case because the plaintiff's prior state claim against the competitor had been identical and the state court had previously determined that the publication was not defamatory. The F.D.C.P.A. claims presented in the instant case are not identical to the claims adjudicated in the state court proceeding underlying this action and have not been previously litigated. Finally, the defendants cite to Lewis v. City of New York, 17 Misc.3d 537, 844 N.Y.S.2d 650 (Sup. Ct. Bronx Co. 2007), a wrongful death action brought by the estate of a man who was killed when he was run over by a tractor-trailer being utilized as a float during a parade. In Lewis, the lessee of the tractor, which bore its logo, was collaterally estopped from denying vicarious responsibility for the accident by virtue of a related federal declaratory judgment action brought by its insurer. Finally, the defendants cite to Green v. Santa Fe Industries, Inc., 70 N.Y.2d 244, 519 N.Y.S.2d 793 (1987) in which the Court of Appeals determined that privity did *not* exist to preclude a claim filed by one investor (the Borgs) based upon the fact that a separate

investor (the Greens) had brought a separate unsuccessful action. In Green, the Court of Appeals stated:

> We first address defendants' contention that plaintiffs' claim was properly dismissed as barred by res judicata or collateral estoppel. Defendants rely on the final dismissal of the Greens' Federal court action in which the Greens, as minority shareholders in Kirby, made claims identical in legal theory to those plaintiffs assert here. Since the Borgs were not parties to the Federal litigation, the question of whether they should be precluded by its unsuccessful outcome turns on whether they can be said to have been in privity with the Greens. We think it is clear that the Borgs were not in privity. ...
>
> It is fundamental that a judgment in a prior action is binding not only on the parties to that action, but on those in privity with them ... Generally, to establish privity the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding ... Thus, there can be privity to make a legal determination in a declaratory judgment action brought by a union binding in a subsequent action by a member ... to cause a judgment against an insured to have binding effect in a subsequent action against his liability insurer ... ; to make a judgment in an action brought by a trustee in bankruptcy a bar in a subsequent action by a creditor ...; or to make a dismissal on the merits of a shareholders' derivative action binding on other shareholders as members of a represented class so as to preclude them from bringing a similar action ... . Here, the Borgs cannot be said to have been barred as members of a class of shareholders. The Greens sued in their own behalf--not in a stockholders' derivative action--and attempts at class certification were denied .... The only relationship between the Greens and the Borgs was that they owned separate blocks of stock in the same company. It is obvious, then, that privity of the traditional sort is not involved.

Green, 70 N.Y.2d at 252-253.

Fuerestein was not in privity with RGGT in the underlying proceeding. RGGT's interest was in collecting an alleged debt. Fuerestein's interest was in providing legal representation for RGGT. Reyes v. Kenosian & Miele, LLP, 619 F.Supp.2d 796 (N.D.Cal., 2008)(Law firm and

attorney hired by creditor to collect debt from debtor in underlying state court action were not in privity with creditor in underlying action, and thus, res judicata did not bar firm and attorney from litigating whether creditor owned or was assigned debt in accordance with Fair Debt Collection Practices Act (FDCPA); while firm and attorney shared certain goals with creditor in collecting debt, they did not share identity of interest, nor was there indication that firm and attorney had control over underlying action such that they should have reasonably expected to be bound by result of action.); Foster v. D.B.S. Collection Agency, 463 F.Supp.2d 783 (S.D.Ohio 2006)(Owner of debt collection agency and attorney for agency were not same parties as collection agency, and thus claim preclusion could not apply with regard to agency's prior actions against debtors in state court to collect debts and debtors' subsequent action against owner and attorney in federal court under Fair Debt Collection Practices Act (FDCPA), since owner and attorney were not identical to agency and they were not in privity with agency.); Kolker v. Sanchez, 1991 WL 11691589 (D.N.M. 1991)(The defendant relies on an agency theory between attorneys and their clients which is persuasive but not convincing since the FDCPA was specifically amended so as not to exempt lawyers from the definition of "debt collectors."). The resolution of the underlying mechanics lien claim by RGGT did not insulate Fuerestein from a claim under the F.D.C.P.A..

Based on the above, the motion for summary judgment should be denied.

## Conclusion

Based on the above, it is recommended that the motion for summary judgment be denied.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3),

"written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
February 18, 2011